**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert L Wade, Jr., | No. CV-19-02823-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of the Social Security Administration's ("Commissioner") decision to deny Plaintiff Robert Wade's application for Title II Disability Insurance Benefits under the Social Security Act (the "Act"). Mr. Wade filed a Complaint seeking judicial review of the decision. (Doc. 1.) The matter is fully briefed. For the following reasons, the decision is affirmed.

**I.   BACKGROUND**[1]

Mr. Wade, a former National Football League ("NFL") player, filed an application for disability benefits alleging disability due to various orthopedic conditions, including neck and back pain, as well as neurocognitive deficits he attributes to concussions he sustained while playing football. (R. at 13, 15.) After a hearing, an administrative law judge ("ALJ") issued a written decision finding Mr. Wade not disabled. (*Id.* at 13–27.) The Appeals Council denied review, making the decision final and ripe for this

---

[1] The Court has reviewed the entirety of the medical evidence. In lieu of providing a detailed summary of it here, the Court will reference and incorporate particular evidence as appropriate in its analysis.

Court's review. (*Id.* at 1–3.)

The ALJ found Mr. Wade had "severe"[2] impairments of status post right shoulder surgeries, chronic left shoulder separation, left knee osteoarthrosis status post meniscal surgeries, and neurocognitive disorder. (*Id.* at 15.) Despite these impairments, the ALJ found that Mr. Wade retained the residual functional capacity ("RFC")[3] to perform "light"[4] work limited to "simple, routine, and repetitive work tasks involving simple work-related decisions and simple instructions with few changes in the work setting." (*Id.* at 21.) Additionally, he could not work around "hazards, such as moving machinery or unprotected heights." (*Id.*) Based on this RFC assessment and testimony from a vocational expert, the ALJ found that Mr. Wade could not perform his past work as a professional athlete. (*Id.* at 25.) However, based on Mr. Wade's RFC, age, education, and work experience and vocational expert testimony, the ALJ found that Mr. Wade could perform other work in the national economy and was therefore not disabled. (*Id.* at 26–27.)

## II.    LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court only reviews issues raised by the party challenging the decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may set aside the decision only when it is not supported by "substantial evidence" or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be

---

[2]    An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).
[3]    "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).
[4]    *See* 20 C.F.R. § 404.1567(b).

- 2 -

upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. "[The Court] review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.* "Finally, [the Court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in a certain federal regulatory provision. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, he is disabled. *Id.*

### III. DISCUSSION

#### A. The ALJ's Discussion of Mr. Wade's Back and Neck Pain

Mr. Wade alleges that the ALJ erred by not accounting for his "chronic back and neck problems" at step two. (Pl. Br. at 11–12.) Specifically, he alleges that the ALJ "erroneously focused her analysis on a single cervical CT scan that showed normal findings" and ignored findings from his chiropractor of "moderate to severe restrained movement, moderate to severe trigger points, and moderate to severe hypertonicity." (*Id.* (citing R. at 263); *see* R. at 17.) Mr. Wade maintains that "[w]hile treatment records indicate some amount of improvement, none indicate that [his orthopedic] problems had fully resolved." (Pl. Br. at 12.)

"[T]he step-two inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). At step two, the ALJ determines whether the claimant has shown a "severe" impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *see also* 20 C.F.R. § 404.1522(b) (defining "basic work activities").

The Court finds no reversible error in the step two analysis as it pertains to Mr. Wade's back and neck conditions. First, contrary to Mr. Wade's assertion, the ALJ did not rely solely on a normal CT scan in finding his neck and back pain non-severe and did not ignore the positive findings Mr. Wade cited. In fact, the ALJ noted the very findings Mr. Wade did. (R. at 17 (citing R. at 263).) The ALJ, however, also noted that Mr. Wade's "muscle strength and sensory tests were normal" and that he "reported significant reduction of pain with chiropractic adjustment." (*Id.* (citing *id.* at 277).) Second, Mr. Wade's suggestion that the ALJ erroneously concluded his orthopedic impairments "had fully resolved" is without merit because the ALJ made no such conclusion. Rather, the ALJ acknowledged these impairments and found that their existence warranted accommodations. Specifically, the ALJ found:

> Overall, the record confirms physical conditions and symptoms that require accommodation, and the undersigned agrees that the claimant could not return to a job that demands significant exertion, such as his past job as an athlete. For difficulties with chronic pain and orthopedic injury, he is accommodated with limitation to light work.

(*R.* at 22.)

Third, and most importantly, even though the ALJ did not find Plaintiff's orthopedic impairments "severe" at step two, the ALJ nonetheless resolved step two in Plaintiff's favor and adequately addressed these impairments later in the RFC assessment at steps four and five. Any error in their omission at step two is therefore harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an ALJ's failure to include an impairment at step two was harmless error where the record reflected that the ALJ considered any limitations posed by the impairment at step four); *see also Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (noting that omission of an impairment at step two could only prejudice the claimant at step three or in the RFC determination where step two was resolved in the claimant's favor).

**B.  The ALJ's Evaluation of Mr. Wade's Migraines and Headaches.**

Mr. Wade further alleges that the ALJ erred at step two by not finding his headaches and migraines severe. (Pl. Br. at 12–14.) Additionally, he alleges that the "ALJ's failure to properly categorize and to give sufficient weight to [his complaints of] migraines and their frequent and disabling effects contributed to the ALJ's ultimate erroneous finding [at step five] that [he] was able to engage in available work." (*Id.* at 14.)

Absent evidence of malingering, an ALJ may only discount a claimant's subjective testimony for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the

ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal marks omitted). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Here, in assessing the severity of Plaintiff's headaches, the ALJ found that "the evidence [was] inconsistent with respect to their frequency and indicate[d] that he manages his current level of activity without treatment." (R. at 19.) Additionally, the ALJ noted that while Mr. Wade reported minimal relief of his headaches with Tylenol, he reported "doing better with prescription Treximet." (*Id.* (citing *id.* at 337–38, 335 ["[H]e was very pleased with results of the [T]reximet."]).) The ALJ further noted that Mr. Wade "otherwise was without treatment specific to migraines." (R. at 19.)

The Court finds no reversible error at step two or in the RFC assessment at step five as it pertains to the ALJ's evaluation of Mr. Wade's headaches and migraines. The ALJ's failure to deem these impairments "severe" at step two is not harmful because the ALJ resolved step two in Mr. Wade's favor and considered these impairments in the RFC. *Lewis*, 498 F.3d at 911. Specifically, the ALJ found:

> [L]imitations are necessary in order to prevent exacerbation of [Plaintiff's] mental health and cognitive symptoms and ensure his safety in the workplace, including due to the possibility of headaches. Accordingly, he should not be exposed to hazards, such as unprotected heights or moving machinery. [His] history of concussion and neurocognitive disorder require limitation to simple, routine, and repetitive work tasks. In order to reduce common stressors for [him] given reports of irritability and sleep disturbance, his work must involve work-related decisions and instructions that are simple. In

>   combination, these exertional and nonexertional parameters will not aggravate pain, place him in safety-sensitive positions, or require undue demands of memory or cognition.

(*R.* at 21.)

Additionally, the ALJ properly discounted the alleged severity of Mr. Wade's headaches and migraines based on effectiveness of medication in relieving symptoms and the lack of more aggressive treatment, which were specific, clear, and convincing reasons. *See Parra*, 481 F.3d at 751; *Warre*, 439 F.3d at 1006. In dispute is Mr. Wade assertion that the "marginal relief" provided by Treximet "is not equivalent to having eliminated the condition entirely."[5] (Pl. Br. at 13.) First, given that Mr. Wade was reportedly "very pleased" with Treximet, the relief is not merely "marginal." (*See* R. at 335.) Second, at no point did the ALJ suggest that Mr. Wade's headaches were "entirely" eliminated, given that the ALJ had accounted for them in the RFC, as noted above. Because Mr. Wade's allegations of debilitating, uncontrolled headaches and migraines were properly discounted, the ALJ was not obligated to prescribe more restrictive limitations in the RFC.[6] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding

---

[5] Additionally, Mr. Wade maintains that "he was quickly forced to discontinue that treatment because it caused extreme grogginess during the day." (Reply at 2 (citing R. at 335, 351).) However, it appears that amitriptyline–not Treximet–was discontinued after seven days due to grogginess the following day. (R. at 335.) With regard to Treximet, Mr. Wade was reportedly "very pleased" with its results. (*Id.*) Additionally, he reported grogginess with Ambien prescribed for insomnia but failed to follow up with a neurologist or psychiatrist for further treatment. (*Id.* at 351.)

[6] Mr. Wade also disputes the discount of his complaints based on the ALJ's finding of inconsistencies in his statements as to the frequency of the headaches. (Pl. Br. at 12–13; *see* R. at 19 ["[T]he evidence is inconsistent with respect to their frequency . . . ."]). The Court agrees with Mr. Wade that "the variance in frequency of [his] reported migraines is trivial." (Pl. Br. at 12.) Nevertheless, his complaints were properly discounted based on the other reasons which the Court found valid. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (finding an ALJ's reliance on an invalid reason to discredit claimant was "harmless error" where the ALJ had also relied on other reasons found valid).

that an ALJ was not required to incorporate limitations from properly discredited evidence).

### C. The ALJ's Evaluation of Mr. Wade's Mental Impairments.

Lastly, Mr. Wade disputes the ALJ's findings regarding his neurocognitive disorder. (Pl. Br. at 14–17.) Specifically, he disputes the adequacy of the ALJ's limitation of "simple, routine, and repetitive work" for accommodating his mental limitations. (Pl. Br. at 14–17.) Mr. Wade alleges that the ALJ improperly discounted his subjective complaints of depression and anxiety as well as the opinion of examining neurologist, Dr. Brian Costell. (Pl. Br. at 14–16; *see* R. at 359–64.) Moreover, Mr. Wade alleges that the ALJ erred by not adequately considering a journal article that he submitted in support of a connection between neurological injury and symptoms of depression and anxiety. (Pl. Br. at 14–15; *see* R. at 31–41.)

The ALJ determines the severity of a mental impairment by assessing and rating the degree of limitation it causes in four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ rates the degree of limitation as none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). A mental impairment is "severe" if it causes more than a "mild" limitation in a functional area. *Id.* § 404.1520a(d)(1).

The determination of a claimant's RFC is an administrative finding reserved to the Commissioner that is based on "all of the relevant medical and other evidence," including medical opinion evidence. *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1513(a)(2). An ALJ is required to evaluate every medical opinion in the record and assign a weight to each. *Id.* § 404.1527(c). In general, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "[P]hysicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability–the claimant's ability to

perform work."[7]  *Id.*  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.*  An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings."  *Id.*  In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors."  20 C.F.R. § 404.1527(c); *Trevizo*, 871 F.3d at 675.

Here, the ALJ found that Mr. Wade had "moderate limitation" in understanding, remembering, or applying information; "no limitation" in interacting with others; "moderate limitation" in concentrating, persisting, or maintaining pace; and "mild limitation" in adapting or managing oneself.  (R. at 23–24.)  As such, the ALJ limited Mr. Wade to "simple, routine, and repetitive work" involving "simple instructions" and making "simple work-related decisions."  (*Id.*)  The ALJ gave "great weight" to the opinion of consultative examining psychologist, Dr. Alexander Piatka; "little weight" to the opinion of examining neurologist, Dr. Brian Costell; and "little weight" to the opinions of the State agency reviewing psychologists.  (*Id.* at 24–25; *see id.* at 348–58 [Piatka report], 359–64 [Costell report].)

Dr. Costell examined Mr. Wade in order to assess the extent of neurological injuries he sustained while playing in the NFL for purposes of the NFL Class Action Settlement Agreement.  (*Id.* at 359, 363.)  On examination, Dr. Costell noted Mr. Wade's subjective reports of various cognitive, physical, and emotional problems and his belief that he was

---

[7]  Although the ultimate issue of whether a claimant is "disabled" or "unable to work" is an administrative finding reserved to the Commissioner, 20 C.F.R. § 404.1527(d)(1), a physician's controverted opinion on the issue may only be disregarded for reasons that are specific, legitimate, and supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see also* SSR 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored.").

unable to maintain any meaningful employment because of them. (*Id.* at 360.) Dr. Costell administered a Mini Cognitive test, on which Mr. Wade scored perfectly. (*Id.* at 362.) Based on the report and testing of the examining neuropsychologist, Dr. Michael Charash (*id.* at 365–72), Dr. Costell diagnosed severe major neurocognitive disorder, depression, anxiety, anger, insomnia, and post-traumatic chronic headaches. (*Id.* at 362–63.) Dr. Costell concluded that Mr. Wade's "symptoms will unfortunately and undoubtedly worsen over time" and "[d]ue to his decreased cognitive and community affairs abilities, he will not be able to gain meaningful employment." (*Id.* at 363.) The ALJ gave little weight to Dr. Costell's opinion because it was on an issue reserved to the Commissioner and Dr. Costell "provided little support regarding specific functional limitations that might preclude work activity." (*Id.* at 25.) The ALJ noted that "the impairments [Dr. Costell] noted on examination and testing are accommodated in the [RFC assessment]." (*Id.*)

The Court finds no error. While Dr. Costell's report establishes the existence of some degree of neurocognitive impairment, it fails to adequately support his extreme opinion that no work is available for Mr. Wade. For example, Mr. Wade's perfect score on the Mini Cognitive test tends to contradict, rather than support, Dr. Costell's conclusion that "[t]he scores obtained in this battery of standardized testing . . . confirm the presence of a severe cognitive decline."[8] (*Id.* at 363.) Moreover, Dr. Costell did not render any opinion or provide sufficient explanation on how Mr. Wade's neurocognitive impairments translate into specific functional limitations that the ALJ could meaningfully assess. Thus, the ALJ's reasons for discounting Dr. Costell's opinion are specific, legitimate, and supported by substantial evidence. Mr. Wade's demonstrable neurocognitive limitations, as noted by the ALJ, are adequately accounted for in this RFC assessment.

Regarding Mr. Wade's complaints of depression and anxiety, while the ALJ noted Dr. Charash's diagnosis of major depressive disorder, the ALJ found "limited evidence of depression or anxiety." (*Id.* at 23 (citing *id.* at 365–72).) Mr. Wade cites to a journal article

---

[8]   Additionally, Mr. Wade scored a 28 out of 30 on the Mini Mental State Exam administered by Dr. Piatka, "which is grossly within normal limits relative to the traditional cutoff score." (R. at 352.)

he submitted discussing a link between neurological injury and symptoms of depression and anxiety. (Pl. Br. at 14–15 (citing R. at 31–41).) At best, this article may explain the cause of Mr. Wade's alleged depression and anxiety. However, it is not sufficient for establishing that he has depression and anxiety, much less "severe" depression and anxiety. *See* 20 C.F.R. §§ 404.1521 ("[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source."), 404.1502(f) ("Objective medical evidence means signs, laboratory findings, or both."). Given the absence of sufficient evidence to demonstrate limitations due to anxiety and depression, the ALJ did not err in failing to account for them in the RFC. *See* SSR 96-8p, 1996 WL 374184, at *1 ("When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.").

**IT IS THEREFORE ORDERED**, affirming the decision of the Commissioner.

**IT IS FURTHER ORDERED**, directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 13th day of July, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge